UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAURA H.,[1]

                                    Plaintiff,            Case # 23-CV-1192-FPG

v.                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

Plaintiff Laura H. brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied her application for Supplemental Security Disability benefits. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 7. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the Complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

On August 21, 2013, Laura H. ("Plaintiff") protectively filed an application for Social Security Disability benefits. *See* Tr. 723. She alleged disability since February 2013 due to anxiety and depression, hearing loss, panic attacks, and high blood pressure. Tr. 71. Plaintiff's application was originally denied during administrative proceedings in front of an Administrative Law Judge ("ALJ"), but the case was remanded in August 2018 for further proceedings on appeal to the

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

1

district court. Tr. 319-325; 326. At the remand hearing in October 2019, Plaintiff amended her onset date to June 1, 2014. Tr. 558, 617. In March 2020, ALJ Michael W. Devlin issued an unfavorable decision, finding Plaintiff not disabled. Tr. 257-274. Again, the case was remanded for further proceedings on appeal to the district court. Tr. 632-642; 643. In June 2023, Plaintiff had another ALJ hearing in front of ALJ Michael W. Devlin, who again found that Plaintiff was not disabled. Tr. 556, 575. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

### II.    Disability Determination

An ALJ must follow a five-step "sequential evaluation" to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa*, 168 F.3d at 77 (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

**DISCUSSION**

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 1, 2014 through her date last insured of September 30, 2019. Tr. 558. At step two, the ALJ found that Plaintiff suffered from severe impairments of hearing loss, major depressive disorder, generalized anxiety disorder, and panic disorder. *Id*. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 559.

Next, the ALJ determined that Plaintiff had the RFC to perform to perform a full range of work at all exertional levels but with some nonexertional environmental and social limitations. Tr. 561-62. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work from the amended alleged onset date through the date last insured. Tr. 573. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. The ALJ therefore found that Plaintiff was not disabled. Tr. 574.

### II.     Analysis

Plaintiff takes issue with the ALJ's decision on the basis that the ALJ did not "adequately evaluate" the treating opinion of Dr. Nichols as it relates to Plaintiff's impaired hearing, and that the ALJ's decision is not supported by substantial evidence because he relied on his lay assessment of the medical records as it relates to Plaintiff's impaired hearing. ECF No. 6-1 at 17. Due to these alleged errors, Plaintiff argues that this case must be reversed, or in the alternative, remanded. *Id.* at 1. For the reasons below, this Court disagrees.

### i.    Treating Opinion of Dr. Nichols

First, Plaintiff argues that the ALJ failed to "adequately evaluate" the treating opinion of Dr. Nichols. *Id.* at 17. Specifically, Plaintiff faults the ALJ for only giving "limited weight" to Dr. Nichols's opinion, *id.*, asserting that the ALJ should have given Dr. Nichols "controlling weight," pursuant to the "treating physician rule." *Id.* at 19, 20.

Plaintiff filed her claim prior to March 27, 2017, at which time the treating physician rule was still in effect. *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 F. App'x 34, 35 (2d Cir. 2017) (summary order). Under the treating physician rule, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (brackets omitted). However, an ALJ may discount a treating physician's opinion if it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must "explicitly review the factors listed in 20 C.F.R. § 404.1527(c) to determine what (if any) lesser weight to give those opinions." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). Those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); 20 CFR § 404.1527(c)(5) (giving more weight to a specialist than a source not a specialist). But the ALJ need not undertake a "slavish recitation of each and every factor" where

her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order).

Here, the ALJ specifically addressed the frequency, length, nature and extent of the treatment when he noted that Kelly Rose Nichols, D.O., was Plaintiff's primary care provider beginning in June 2016 and was seen for "regular and routine follow-ups" in March 2017, June 2017, September 2017, December 2017, June 2018, December 2018, and July 2019. Tr. 560, 566, 571; *see Greek*, 802 F.3d at 375. While the ALJ observed that between December 2016 and the date last insured, Dr. Nichols "consistently noted that [Plaintiff] had no depression symptoms, mood and affect were normal on examinations, and her depression was well controlled on medication and appeared to be in remission," Tr. 569, the ALJ found that not much was said by Dr. Nichols regarding Plaintiff's hearing except that "[she] has hearing loss." Tr. 571. For example, the ALJ noticed that Dr. Nichols reported no problems or reports in her treatment notes concerning Plaintiff's hearing loss. *Id.* The ALJ further observed that Dr. Nichols did not describe Plaintiff as having any difficulty in communicating with her because of such hearing loss. *Id.* When it came to assessing the amount of medical evidence supporting the opinion, the ALJ explicitly addressed the issue, writing that Dr. Nichols's opinion "[was] not supported by her own treatment notes and is inconsistent with the record as a whole." *Id.* For example, while Dr. Nichols opined that Plaintiff had difficulty hearing, communicating, and that her hearing loss caused safety issues and decreased sensory awareness, *id.*, the ALJ found that nowhere in Dr. Nichols's records did it note that Plaintiff had any issues communicating with Dr. Nichols as a result of hearing loss and that Dr. Nichols had no report describing how hearing loss contributed to Plaintiff's lack of safety. *Id.* As such, the ALJ found that Dr. Nichols's opinion was inconsistent with the medical evidence and deserved limited weight. *Id.* Finally, when it came to whether Dr. Nichols was a specialist, the ALJ

6

clearly denotes that Dr. Nichols is Plaintiff's primary care provider, and thus, not a specialist. Tr. at 571; *see* 20 C.F.R. § 404.1527(c).

Even if this Court were to assume that Plaintiff's claim fell within the purview of the "treating physician rule" because Plaintiff initiated her claim prior to regulatory changes, the Court finds that the ALJ satisfied the treating physician rule and properly gave Dr. Nichols's opinion "limited weight" based on the ALJ's review of the factors listed in 20 C.F.R. § 404.1527(c). However, even if this Court were to find that the treating physician rule did not apply here, the Court concludes that for the reasons discussed above, substantial evidence supports the ALJ's finding that Dr. Nichols's opinion deserved "limited weight." Thus, this Court finds that neither reversal nor remand are warranted.

### ii.    Substantial Evidence

Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ relies on his lay assessment of the medical records. ECF No. 6-1 at 17. Specifically, Plaintiff argues that the evidence in the record does not support the ALJ's RFC determination limiting Plaintiff to a work environment with no more than a moderate noise level. *Id.* at 18.

So long as the "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision," an ALJ is not required to "mention[] every item of testimony presented to him or [] explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Mordean L. v. Comm'r of Soc. Sec.*, No. 19-CV-277-FPG, 2020 WL 6886557 at \*5

(W.D.N.Y. Nov. 24, 2020) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle her to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662-FPG, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021).

With regard to the ALJ's RFC determination that limited Plaintiff to performing jobs with no more than a moderate noise level, the ALJ did cite to the fact that Plaintiff could hear during her treatment visits.[2] Tr. 563. Additionally, the ALJ found that consultive internal medicine examiner Samuel Balderman, M.D. opined that Plaintiff's "moderate difficulty" with hearing during a normal conversation was "consistent with the medical evidence of record," which included audiogram evidence of bilateral hearing loss, worse hearing on the right, and evidence of the use of hearing aids. Tr. 570.[3] From this record, the Court can glean that while the ALJ found little support in the record for Plaintiff's hearing loss, the ALJ considered Plaintiff's reports of her alleged "difficulties with hearing[,] making communication with others difficult." Tr. 570. Despite such little medical evidence in the record to support the hearing loss, the ALJ considered Plaintiff's subjective statements relating to hearing loss and Dr. Balderman's opinion, and thus chose to craft an RFC that limited her exposure to no more than moderate noise levels in the work environment. Tr. 561 (limiting Plaintiff to a work environment with no more than a moderate noise level, frequent use of telephones, and other audio equipment in the RFC determination); Tr. 568-69.

---

[2] Plaintiff argues that Dr. Nichols opined that her hearing loss "caused safety issues and decreased sensory awareness," ECF No. 6-1 at 19. However, Plaintiff fails to explain how ALJ's finding of a limitation of moderate noise in the work environment, Tr. 561, does not satisfy Dr. Nichols's safety and sensory awareness concerns.

[3] Even if this Court were to discount Dr. Balderman's opinion because it was from 2013 and prior to Plaintiff's amended alleged onset date of June 1, 2014, as Plaintiff implies the Court should, ECF No. 6-1 at 18, this Court's analysis remains the same, as the ALJ concluded that there was "little treatment for hearing loss" in the record. Tr. 569. Additionally, Plaintiff makes no argument relating to Dr. Iris Danzinger's findings, which took place in 2013 prior to Plaintiff's amended alleged onset date, or as to findings related to Plaintiff's appointments at Southside Hearing Center in 2019 and 2023. *See* ECF No. 6-1 at 11-12.

8

Given the lack of evidence in the record supporting more restrictive limitations, Plaintiff seemingly argues that the ALJ erred by giving Plaintiff the benefit of the doubt with respect to Plaintiff's hearing loss testimony. ECF No. 6-1 at 18. An ALJ "d[oes] not, therefore, commit reversible error by giving Plaintiff the benefit of the doubt by including [an] additional limitation in the RFC, even in the absence of a medical opinion identifying such a requirement." *Anissha W. v. Comm'r of Soc. Sec.*, No. 23-CV-6019-FPG, 2024 WL 123521, at *3 (W.D.N.Y. Jan. 11, 2024); *see Jillian R. v. Comm'r of Soc. Sec.*, No. 20-CV-1735, 2022 WL 13697992, at *9 (W.D.N.Y. Oct. 21, 2022) (concluding that the ALJ reasonably gave Plaintiff the benefit of the doubt by limiting her to work with only occasional interaction with coworkers and supervisors despite no physician having opined on Plaintiff's social interactions).

As such, the Court finds that the ALJ's assessment was supported by substantial evidence, and thus, Plaintiff is not entitled to reversal or remand.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 28, 2026
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

9